TOMÁS A. BERRÍOS, ETC., demandantes y recurridos, *v.* INTER-NATIONAL GENERAL ELECTRIC, (P.R., INC.), demandada y recurrente.

*Número:* 573     *Resuelto:* 18 de abril de 1963

110

*José Trías Monge, Richard H. Francis, Horacio R. Subirá, Jorge Segarra Olivero,* abogados de la recurrente; *A. Ramírez Silva,* abogado de los recurridos.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Los recurridos, Tomás A. Berríos y su esposa Matilde Berríos demandaron a la recurrente International General Electric, P.R. Inc., en daños y perjuicios, sufridos porque según se alega fueron víctimas de persecución maliciosa de parte de la recurrente y de un embargo ilegal gestionado por ésta.

Los hechos del caso, según se desprenden de la transcripción de la evidencia y de las conclusiones de hechos formuladas

por el tribunal de instancia, en 21 de julio de 1961, se relacionan a continuación.

Mediante contrato de venta condicional otorgado en 1ro de noviembre de 1958, Berríos adquirió de la recurrente una cocina y una nevera por la suma de $461. A los fines del pago del plazo inicial de $100, Berríos expidió un cheque, marcado Núm. 97, por dicha cantidad. El 20 de noviembre, ese cheque u otro con igual número suscrito por la misma persona, (1) fue certificado por el Banco Popular de Puerto Rico a requerimiento de la recurrente, pero el cheque nunca fue cobrado y, por el contrario, se extravió en manos de los empleados de la recurrente. Sobre la faz del referido contrato de venta condicional aparece un sello que lee: "Received— 20 Nov. 1958."

Aunque la prueba fue contradictoria, el juez a quo determinó que empleados de la recurrente hicieron gestiones con el recurrido para que éste les expidiera un nuevo cheque alegándole que todavía en los libros de la corporación aparecía que él debía esa partida de $100. El testimonio de los testigos de la recurrente fue al efecto de que al darse cuenta los funcionarios de la recurrente, más de un año después de la certificación del cheque, que ésta no había recibido el efectivo que representaba dicho cheque, consultaron al Banco Popular y allí se les informó que los reglamentos y procedimientos establecidos por dicho banco requerían una autorización expresa del librador antes de hacer efectiva la cantidad representada por el cheque certificado extraviado (T.E. págs. 65, 69 y 84, vista de 21 de febrero de 1961 y págs. 42, 43, 45 y 46, vista de 27 de marzo de 1961). Declararon testigos de la recurrente que sus gestiones con el recurrido a tal efecto resultaron infructuosas; gestiones que los recurridos negaron

---

(1) La prueba no es clara sobre este particular. (T.E. págs. 59 y subsiguientes, vista de 21 de febrero de 1961 y págs. 15 y subsiguientes, vista de 27 de marzo de 1961.)

en todo momento conocer (T.E. págs. 69, 87, 94 y 95, vista de 1 de febrero de 1961).

En 29 de enero de 1960 la recurrente radicó demanda de reposesión de bienes muebles en el Tribunal de Distrito, Sala de Mayagüez, contra Berríos alegándose la venta condicional de referencia y la violación de sus términos por el comprador debido a su falta de pago de $100 del precio de venta. Simultáneamente se radicó moción solicitando aseguramiento de sentencia, se obtuvo una orden de embargo y se expidió el correspondiente mandamiento al alguacil del tribunal para el diligenciamiento de dicha orden. El día 5 de febrero de 1960 como a eso de las tres de la tarde el Alguacil Edil Rivera se presentó en la residencia de Berríos y su esposa acompañado de un empleado de la recurrente a diligenciar el embargo y a esos efectos llevaron una pequeña guagua con el fin de transportar los bienes en cuestión, o sea, la nevera y la cocina. (T.E. págs. 14 y subsiguientes, vista de 21 de febrero de 1961.)

Declaró el alguacil Rivera que aunque escribió en el mandamiento de embargo que había practicado el embargo y, además, le entregó los papeles de dicho embargo a Berríos, posteriormente añadió en el mandamiento las palabras "Dejado sin efecto" (T.E. pág. 19) porque nunca llegó a practicarlo. Continuó declarando que la razón por la que no practicó dicho embargo fue que el recurrido, aunque alegó haber pagado, no pudo mostrar el recibo; trató de hacer unas llamadas a Ponce sin lograrlo; le dijo que iba a pagar y al ir a escribir el cheque fue aconsejado por otra persona que primero fuera donde el Lic. Ramírez Silva. Una vez en la oficina del Lic. Ramírez Silva, Berríos expidió un cheque por cien dólares, con fecha de 5 de febrero. Al dorso del mismo se redactó y firmó por Berríos una declaración al efecto de que "efectúo este pago bajo protesta con el fin de impedir el embargo decretado pero reservándome el derecho de cualquier reclamación que tenga contra la demandante ya que

he satisfecho el importe que se me reclama con anterioridad."
Dicho cheque fue recibido y cobrado por la recurrente. Seis
meses después el caso fue archivado por falta de trámite.

El tribunal de instancia determinó, y el récord lo de-
muestra, que tanto el patrono como empleados subalternos
de Berríos presenciaron los incidentes relativos al diligencia-
miento del embargo; que el recurrido "no solo sufrió la natu-
ral alteración nerviosa que ocasiona a un ciudadano un pro-
ceso judicial de esta naturaleza y además, la verguenza y
el bochorno de lo que implicaba para su buen nombre este
incidente. . . ." La esposa sufrió un síncope, perdiendo el
conocimiento, sufriendo el recurrido, como consecuencia, la
preocupación adicional y la angustia del efecto que esto le
había producido a su esposa, pues ésta padecía de presión
alta. Esta condición se agudizó en tal forma con motivo del
incidente del embargo que la recurrida tuvo que guardar
cama bajo tratamiento médico por varios días y luego tuvo
que ser recluida por unos tres días en un hospital en Ponce
(T.E. págs. 50, 55, 62–65, vista de 27 de marzo de 1961).

El tribunal de instancia resolvió que la acción de repose-
sión de bienes muebles fue radicada por la recurrente a
sabiendas de que los recurridos no le debían suma alguna
bajo el contrato de venta condicional, siendo obvio que dicha
acción se inició con el propósito de amedrentar al recurrente
Berríos a hacer lo que en ley no tenía obligación de hacer,
o sea, expedir un nuevo cheque. Dictaminó dicho tribunal que
bajo tales circunstancias la recurrente inició maliciosamente
el procedimiento de reposesión y que tal acción constituye una
persecución maliciosa de los recurridos por lo que éstos tienen
derecho a recobrar la indemnización correspondiente por las
angustias, molestias e inconvenientes sufridos por los recu-
rridos como consecuencia de ese injustificado proceso judicial
y el consiguiente embargo ilegal, fijando el tribunal la cuantía
de tales daños en $5,100, condenándose a la recurrente, ade-

más, al pago de las costas más $1,000 por concepto de honorarios de abogado.

Señala la recurrente que el tribunal de instancia incurrió en error 1) al resolver que el mero diligenciamiento de un embargo sin incautación de los bienes muebles es fuente de causa de acción por daños y perjuicios; 2) al concluir que los hechos que el tribunal encontró probados constituían una persecución maliciosa de parte de la recurrente al instar un procedimiento de reposesión a sabiendas de que no tenía una causa de acción contra el demandante; 3) al apreciar la prueba y; 4) al condenar a la recurrente al pago de honorarios de abogado.

■■■ 1.—Dispondremos, en primer lugar, del segundo error imputado. En el 1928 este Tribunal adoptó la doctrina del derecho común inglés y de la minoría de los Estados de la Unión Americana al resolver en el caso de *López de Tord & Zayas* v. *Molina*, 38 D.P.R. 823 (1928), que en Puerto Rico no existe la acción civil de daños y perjuicios por persecución maliciosa como consecuencia de un pleito civil. [2] Posteriormente, en el caso de *Díaz* v. *Distribuidores R.C.A. Víctor, Inc.*, 47 D.P.R. 562 (1934), se insinuó que "ciertos pleitos maliciosos por su naturaleza puedan quizás causar daños y perjuicios." Pero a renglón seguido se indicó que la radicación de un pleito civil por sí solo no tiende por naturaleza a causar daños, exigiéndose que se deben alegar y probar daños específicos para justificar la concesión de una indemnización. En el único caso en Puerto Rico donde se ha sostenido una acción de daños y perjuicios por persecución maliciosa con motivo de un pleito civil fue en *Fonseca* v. *Oyola*, 77 D.P.R. 525 (1954). Sin embargo, en ese caso se trataba de circunstancias extremas y según se dijo a la página 528: ". . . aquí la prueba demostró la institución maliciosa, por parte del

---

[2] Sobre este tema, véase Amadeo, *Acciones Civiles de Daños y Perjuicios en el Derecho Puertorriqueño, por el Uso Injustificado de los Procedimientos Legales,* Rev. C. Abo. P.R., Vol. VII, pág. 234 (1944).

demandado, de varias acciones de desahucio sin causa probable, . . . acosando a la demandante tanto con su conducta y actuaciones como con dichos pleitos fundados todos en la alegada falta de pago de un canon en exceso de aquel permitido por la reglamentación federal." No vemos en el presente caso circunstancias extraordinarias que coloquen el mismo fuera de la regla general vigente en Puerto Rico y reiterada en *Pereira* v. *Hernández,* 83 D.P.R. 160 (1961), en el sentido de que en términos generales el derecho puertorriqueño no reconoce una acción de esta naturaleza.

Por lo tanto, resolvemos que incurrió en error el tribunal a quo al declarar con lugar la acción de persecución maliciosa. Los restantes errores, sin embargo, no fueron cometidos.

2.—Básicamente, la contención de la recurrente en cuanto a la determinación que hizo el juez de instancia de que el demandante Berríos sufrió daños como consecuencia del diligenciamiento del embargo es que el mero diligenciamiento de un embargo sin incautación de los bienes no es fuente de una causa de acción de daños y perjuicios. Arguye que, no habiéndose incautado el alguacil de los bienes en cuestión privando a Berríos de su posesión, nunca se consumó el embargo y lo que hubo fue solamente un intento de trabar un embargo —un mero diligenciamiento. Sostiene que tampoco procede una acción por embargo ilegal pues en adición al hecho de que los bienes permanecieron en la casa del demandante no puede decirse que el pleito de reposesión terminó en forma favorable para Berríos ya que, como hemos apuntado, el pleito de reposesión concluyó con una orden de archivo debido a falta de trámite por seis meses al amparo de la Regla 11 de las Reglas para la Administración del Tribunal de Primera Instancia.

Aunque parcialmente correcto, su argumento no tiene el efecto de eximirle de responsabilidad. Veamos.

■ En *Martí* v. *Hernández*, 57 D.P.R. 819 (1940), se dijo que en una causa de acción de daños y perjuicios por embargo ilegal lo que el demandante tiene que alegar y probar es que sus bienes fueron embargados; que la acción que contra él se entabló y en la cual se decretó el embargo terminó por sentencia firme a su favor; y los daños sufridos. Para que la actuación de un alguacil diligenciando una orden de embargo constituya un verdadero embargo, éste debe tomar físicamente posesión de la propiedad mueble y nombrar un depositario. *Pérez Guerra* v. *Matos*, 48 D.P.R. 599 (1935).

Tenemos que concluir, por lo tanto, que en el presente caso no llegó a trabarse el embargo sobre los bienes comprados por Berríos ya que surge de la prueba que éstos nunca se sacaron de su casa (T.E. pág. 30, vista de 21 de febrero de 1961) ni el alguacil tomó posesión de los mismos. Sencillamente lo que sucedió fue que el alguacil cumplimentó los papeles del diligenciamiento durante la discusión en casa del Sr. Berríos, luego se los entregó a éste (T.E. pág. 19, vista de 21 de febrero de 1961), y posteriormente, en la oficina del Lic. Ramírez Silva, después que Berríos hizo entrega a los empleados de la recurrente del cheque bajo protesta, escribió las palabras "Dejado sin efecto" sobre la orden de embargo. (T.E. pág. 22, vista de 21 de febrero de 1961.)

■ Es bueno consignar que la acción para recobrar daños y perjuicios causados por un alegado embargo ilegal es una *ex delicto* basada en el Art. 1802 del Código Civil (31 L.P.R.A. sec. 5141). *Méndez* v. *E. Solé & Co.*, 62 D.P.R. 835 (1944); *R. Muñiz de León & Co.* v. *Melón Hnos. & Cía.*, 56 D.P.R. 330 (1940). Dicho artículo dispone en lo pertinente: "El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado." Es la consagración de la responsabilidad aquiliana. Sobre este principio, dijimos en *Hernández* v. *Fournier*, 80 D.P.R. 93 (1957):

118

"Según el citado artículo, [el 1802 del Código Civil] que establece uno de los principios más fundamentales de nuestro orden jurídico—el de la responsabilidad aquiliana por hechos propios—todo perjuicio, material o moral, da lugar a reparación si concurren tres requisitos o elementos: *primero,* se establece la realidad del daño sufrido; *segundo,* existe un nexo causal entre el daño y la acción u omisión de otra persona; y *tercero,* dicho acto u omisión es culposo o negligente. 4 Castán, *Derecho Civil Español* (8a. ed. 1956) 814 y sigtes.; Puig Peña, *Tratado de Derecho Civil Español,* tomo IV, vol. 2 (1951) 537 y sigtes.; 2 Díaz Pairó, *Teoría General de las Obligaciones* (3a ed. 1954) 51 y sigtes.; Borrell, *Responsabilidades Derivadas de Culpa Extracontractual Civil* (1942) 60–76, 157–177. Ese precepto '. . . no admite limitación ni excepción de clase alguna; y por consiguiente el causante de un daño debido a culpa o negligencia, sean las que sean sus consecuencias, está obligado a repararlo, a que al perjudicado le desaparezcan los efectos del daño sufrido.' Borrell, op. cit. 169. Así, la forma de realizar el daño es indiferente. Y por el mismo fundamento en nuestra jurisprudencia son resarcibles tanto los daños materiales como los daños puramente morales." (Citas.)

■ Somos de opinión que los hechos de este caso, independientemente de si se perfeccionó o no el embargo, dan lugar a la imposición de responsabilidad bajo la letra del Art. 1802. Estamos ante una situación en que ha habido actos injustificados de parte de la recurrente mediando descuido o negligencia, y además, se han probado daños.

■ El resultado de la acción de reposesión entablada por la recurrente es uno de los elementos que le imprimen un carácter de improcedencia y de injustificación a sus actos. Su planteamiento de que dicho pleito no terminó favorablemente para el demandante a base de que lo que resultó fue una desestimación por inactividad, no tiene mérito. La Regla 39.2 de las de Procedimiento Civil de 1958 dice claramente que ". . . una desestimación bajo esta Regla 39.2 y *cualquier otra desestimación,* excepto la que se hubiere dictado por falta de jurisdicción, o por haber omitido acumular una parte indispensable, *tienen el efecto de una adjudicación en los*

*méritos.*" (Énfasis nuestro.) Igual resultado se obtenía bajo las Reglas de 1943. Cf. *Costas Purcell* v. *Tribunal Superior,* 88 D.P.R. 10 (1963); *Bolker* v. *Tribunal Superior,* 82 D.P.R. 816 (1961).

Otra razón que responsabiliza a la recurrente en sus actuaciones es el hecho de que ya había recibido un cheque certificado, a solicitud de ella misma, en pago de la obligación que reclamaba. La relación contractual entre el demandante Berríos y la recurrente había quedado extinguida pues la certificación de un cheque a instancias de la persona a cuya orden se expide releva de responsabilidad al librador y a todos los endosantes. Art. 541 del Código de Comercio—19 L.P.R.A. sec. 365. Al quedar relevado el librador y los endosantes lo que subsiste es una obligación del banco librado de pagar el importe del cheque al tenedor del mismo ya que el recibo de un cheque certificado a solicitud de aquel a cuya orden se expide es equivalente al recibo de dinero en efectivo. La recurrente ocupó con respecto al banco la posición de un depositante de los fondos separados de la cuenta del recurrido Tomás Berríos a consecuencia de la certificación del cheque. Cf. *San Juan Dock Co.* v. *Sancho Bonet,* 52 D.P.R. 94 (1937); *Armstrong* v. *U.S.,* 171 F.Supp. 835 (Pa. 1959); *Mitchell* v. *Asbury,* 95 S.E.2d 341 (Ga. 1956); *Umbsen* v. *Crocker First Nat. Bank of San Francisco,* 203 P.2d 752 (Cal. 1949); *Fiss Corporation* v. *National Safety Bank & Trust Co.,* 77 N.Y.S.2d 293 (1948); Bailey, *Bank Checks,* 2a. ed. 1962, págs. 154–157. Por consiguiente a la recurrente le asistía el derecho a cobrar del banco certificante el importe del cheque prestando, si éste se lo exigía, garantía suficiente para la protección del banco en caso de que luego apareciera el cheque en manos de un tenedor de buena fe. Cf. *Vineland Nat. Bank & Trust Co.* v. *Edwards,* 147 Atl. 374 (N.J. 1929); *Bailey,* cit. supra, págs. 311–312. O el banco pudo, tratándose de una suma pequeña como la envuelta en este caso, haber variado su práctica previamente señalada y por consiguiente haber

pagado el cheque a un tenedor de reconocida solvencia que lo ha perdido previo recibo de su compromiso escrito de garantizar al banco contra cualquier reclamación por razón de dicho pago, asumiendo, por supuesto, que dicho tenedor estuviese en condiciones de suscribir tal escrito. Además, el tenedor pudo haber iniciado una acción ordinaria contra los tenedores desconocidos del cheque en cuestión para establecer por sentencia declaratoria que había retenido título del instrumento para luego exigir su pago al banco.

El librador estaba justificado en negarse a autorizar al banco por escrito, según éste lo había sugerido, a pagar el cheque ya que de hecho tal autorización le imponía responsabilidad por el referido instrumento cuando ya dicho librador había sido relevado de toda responsabilidad como consecuencia de la aceptación del cheque por el banco.

Es cierto que la recurrente tenía derecho a recibir el importe del cheque como parte del precio de los bienes vendidos al demandante, pero el procedimiento que eligió para cobrar los $100 una vez se le extravió el cheque certificado fue improcedente y culposo, perjudicando así al demandante Berríos. (³) Una compañía como la International General Electric cuyas ventas de este tipo y cuyos negocios con bancos son cuestión de rutina debió haber obtenido el asesoramiento necesario para seguir el procedimiento adecuado con el propósito de hacer valer sus derechos.

---

(³) Esto es lo que tratadistas como Borrel Macia, Camarota y Castán han designado como "el abuso del derecho."

"Abuso de un derecho es apoyarse en un precepto legal, en una ley cerrando los ojos a la realidad de las cosas, al curso del mundo, y actuar como si tan solo aquella disposición fuese una realidad, aunque sea saliéndose de los caminos de la justicia y de la equidad." Borrel Macia, *Responsabilidades Derivadas de Culpa Extracontractual Civil*, 2da. ed. (1958), págs. 115–142, cita precisa a la pág. 122; cf. Camarota, *Responsabilidad Extracontractual*, 1947, págs. 131–161; Castán, *Derecho Civil Español, Común y Foral*, tomo I, vol. 2, 8va. ed., págs. 50–58 y tomo IV, 7ma. ed., págs. 782–783.

■ 3.—El tercer error basado en la apreciación de la prueba carece de mérito, pues la cuestión de si se expidieron o no dos cheques con el Núm. 97, o si se hicieron gestiones con Berríos antes de radicarse la acción de reposesión para que éste autorizara al banco a pagar el cheque certificado, y si se ejecutó o sólo se trató de diligenciar el embargo no afecta materialmente la conclusión de que la acción iniciada en este caso no procedía como hemos demostrado. Si bien es cierto que el alguacil Rivera y el agente de la recurrente declararon que sus gestiones con respecto al diligenciamiento del embargo se realizaron en forma tranquila y no notoria no es menos cierto que hubo prueba amplia y convincente en sentido contrario por lo que el tribunal de instancia estuvo justificado en dirimir el conflicto en dicha prueba en favor de la contención de los recurridos. Tampoco estaba dicho tribunal obligado por las circunstancias del caso a concluir que la acción de reposesión era una actuación razonable de la recurrente a) para lograr lo que creía de buena fe podía exigir en derecho, o b) con motivo de las indicaciones del Banco Popular, en cuanto a la práctica a seguir en casos de cheques certificados perdidos, según hemos demostrado previamente.

■ 4.—El último error señalado, consistente en la determinación sobre el pago de honorarios de abogado también carece de mérito, pues el elemento de temeridad en este caso es manifiesto. *San Miguel y Cía.* v. *Santiago Lavandero,* 87 D.P.R. 316 (1963); *Ortiz* v. *Martorell,* 80 D.P.R. 544 (1958); *Prado* v. *Quiñones,* 78 D.P.R. 322 (1955); *Castro* v. *Payco, Inc.,* 75 D.P.R. 63 (1953). Sin embargo, consideramos que dentro de las circunstancias de este caso la cuantía de tales honorarios determinada por el tribunal de instancia es excesiva y debe reducirse a la suma de $500 ([4]).

---

([4]) No se impugnó el dictamen del tribunal de instancia con respecto a la cuantía de los daños.

*Por las razones indicadas debe modificarse la sentencia, y así modificada confirmarse.\**

---

\*NOTA DEL COMPILADOR: La sentencia en este caso expresa:
"El Juez Asociado señor Blanco Lugo disiente de la parte de la anterior opinión por la cual se confirma el pronunciamiento del tribunal de instancia imponiendo a la demandada recurrente el pago de honorarios de abogado por entender que ésta no incurrió en temeridad al defenderse de la reclamación de la parte demandante recurrida."