Versión para imprimir


EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ana Rosa Nieves Díaz<br><br>    Apelante<br><br>              v.<br><br>Sixto González Massas<br><br>    Apelado | Certiorari<br><br>2010 TSPR 65<br><br>178 DPR \_\_\_\_ |

Número del Caso: AC-2005-73

Fecha: 27 de abril de 2010

Tribunal de Apelaciones:

        Región Judicial de Arecibo

Jueza Ponente:      Hon. Mildred Pabón Charneco

Abogada de la Parte Peticionaria:

            Lcda. Maritza Miranda López

Abogado de la Parte Recurrida:

            Lcdo. Julio Berríos Jiménez

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del     Tribunal Supremo que está sujeto a los cambios y correccione  s del proceso de compilación y publicación oficial de las decisio   nes del Tribunal. Su distribución electrónica se hace como    un servicio público a la comunidad.

Ana Rosa Nieves Díaz

    Apelante

        v.                       AC-2005-73

Sixto González Massas

    Apelado

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 27 de abril de 2010.

La señora Ana Rosa Nieves Díaz (peticionaria Nieves) comparece ante este Foro mediante un recurso de apelación –el cual acogimos como una solicitud de *certiorari* por ser lo procedente en derecho– y nos solicita que revisemos una sentencia emitida por el Tribunal de Apelaciones, mediante la cual se modificó una determinación del Tribunal de Primera Instancia, Sala Superior de Bayamón.

A través de sentencia sumaria, el tribunal de instancia desestimó la demanda de daños y perjuicios presentada por la peticionaria Nieves y declaró con lugar la reconvención interpuesta por el señor Sixto

González Massas (recurrido González). En la etapa apelativa, el Tribunal de Apelaciones sostuvo la decisión del foro de instancia en cuanto a desestimar la demanda, pero revocó la determinación de declarar con lugar la reconvención, pues concluyó que existían unas controversias de hechos que no permitían la disposición sumaria del pleito. Así, pues, ese tribunal apelativo ordenó la continuación de los procedimientos ante el foro de instancia.

Nos corresponde examinar si el Tribunal de Apelaciones actuó correctamente al resolver lo siguiente: (1) confirmar la desestimación –mediante sentencia sumaria– de la demanda de daños y perjuicios presentada por la peticionaria Nieves; y (2) devolver el caso al foro de instancia para que se evaluaran dos asuntos relacionados con la reconvención presentada por el recurrido González, ya que existían controversias de hechos en cuanto a: (a) la presunción de ganancialidad de la deuda contraída por el señor Ángel Rodríguez Bracero (Rodríguez Bracero) mientras estuvo casado con la peticionaria Nieves; y (b) la validez de una escritura de liquidación de bienes gananciales otorgada por la peticionaria Nieves y Rodríguez Bracero.

Por las razones que discutimos más adelante, este Tribunal revoca la decisión emitida por el Tribunal de Apelaciones.

**I**

Este caso tiene su origen en una querella presentada por el recurrido González en contra de Rodríguez Bracero h/n/c A.R. Construction ante el Departamento de Asuntos del Consumidor (D.A.Co.). Como expondremos más adelante en detalle, ante el incumplimiento de Rodríguez Bracero con una orden emitida por esa agencia administrativa, se presentó el caso Civil Núm. DAC-1999-0391 en el tribunal de instancia. Ese foro emitió una sentencia que tampoco fue cumplida por Rodríguez Bracero, lo que provocó que se ordenara una anotación preventiva de embargo para asegurar la efectividad de la sentencia. No obstante, el bien inmueble sobre el cual se anotó ese embargo preventivo resultó que constaba inscrito a favor de la peticionaria Nieves, quien no era parte demandada en el pleito DAC-1999-0391. Como consecuencia del alegado perjuicio sufrido por ésta frente al mecanismo de aseguramiento de sentencia concedido a favor del recurrido González, la peticionaria Nieves presentó el caso Civil Núm. DDP-2004-0055 ante el foro de instancia.

Debido al entramado procesal de los hechos relacionados al caso de epígrafe, procedemos a discutir por separado los casos DAC-1999-0391 y DDP-2004-0055, ello con el propósito de lograr una mejor comprensión de los detalles particulares del caso. Es importante señalar que la determinación de la que recurrió la peticionaria Nieves

ante el Tribunal de Apelaciones y ante esta Curia es la emitida en el caso DDP-2004-0055.

## A.   Los hechos del caso Civil Núm. DAC-1999-0391

En julio de 1995, el recurrido González y Rodríguez Bracero (quien estaba casado con la peticionaria Nieves) formalizaron un contrato de ejecución de obra, mediante el cual Rodríguez Bracero se comprometió a realizar varias obras en la residencia del recurrido González, ello por el precio de $42,500.  El recurrido González pagó $36,000 a Rodríguez Bracero y éste último comenzó sus labores, pero al poco tiempo abandonó la obra y no terminó lo acordado. A pesar de los reclamos para que terminara la obra, Rodríguez Bracero no actuó, por lo que el recurrido González presentó ante el D.A.Co. una querella por incumplimiento de contrato (Querella Núm. QC-98-CONST-062), únicamente contra Rodríguez Bracero h/n/c A.R. Construction.

En febrero de 1999, el D.A.Co. emitió una resolución en la que concluyó que Rodríguez Bracero no había cumplido con su obligación contractual, por lo que ordenó que éste pagara al recurrido González la suma de $18,000 más los intereses generados a partir del 9 de enero de 1998.[1]  Sin embargo, Rodríguez Bracero incumplió la orden de la

---

[1] El técnico del D.A.Co. preparó un informe en el que expuso que lo construido por Rodríguez Bracero (hasta el momento de abandonar la obra) se estimaba en un costo de $18,000.  A base de esa cantidad estimada, el D.A.Co. concluyó que lo justo era que Rodríguez Bracero devolviera $18,000 al recurrido González, ya que éste último había pagado $36,000 como parte del contrato.  Véase Apéndice de la Petición de *certiorari*, págs. 102-106.

agencia, razón por la cual en abril de 1999 el D.A.Co. acudió al tribunal de instancia y presentó una Petición para hacer cumplir la Orden (caso DAC-1999-0391).[2] En este caso, como ocurrió con la querella ante el D.A.Co., <u>tampoco se incluyó a la peticionaria Nieves ni a la sociedad legal de gananciales que existía entre ésta y Rodríguez Bracero</u>. Luego, en agosto de 1999, las partes anunciaron que habían llegado a un acuerdo en el que Rodríguez Bracero pagaría al recurrido González la cantidad de $20,130 (entre principal e intereses), por lo que el foro de instancia acogió esa estipulación y emitió una sentencia de conformidad el 18 de agosto de 1999, <u>únicamente -como era lo correcto- contra Rodríguez Bracero</u>.[3]

Nuevamente Rodríguez Bracero incumplió con su obligación de pagar lo acordado, lo que provocó que en febrero de 2002 el recurrido González presentara una solicitud de aseguramiento de la sentencia dictada a su favor el 18 de agosto de 1999.[4] El 25 de marzo de 2002, el foro de instancia decretó el embargo preventivo de bienes inmuebles de la parte demandada[5] y ordenó la expedición del

---

[2] <u>José Antonio Alicea Rivera en su carácter de Secretario del Departamento de Asuntos del Consumidor [en beneficio de] Sixto González Massas v. Ángel Rodríguez Bracero h/n/c A.R. Construction</u>, Civil Núm. DAC-1999-0391. Véase Apéndice de la Petición de <i>certiorari</i>, págs. 107-108.

[3] Esta sentencia fue notificada el 1 de octubre de 1999.

[4] El recurrido González solicitó que se embargaran bienes hasta cubrir la cantidad de $23,595.00 (entre principal e intereses legales acumulados).

[5] Como mencionamos, el <u>único demandado</u> en el caso DAC-1999-0391 era Rodríguez Bracero h/n/c A.R. Construction.

correspondiente mandamiento al Registrador de la Propiedad. El documento de la anotación preventiva de embargo fue presentado en el Registro de la Propiedad, Sección Primera de Bayamón, el 17 de junio de 2002.

En abril de 2003, sin someterse a la jurisdicción del tribunal de instancia, la peticionaria Nieves presentó un escrito titulado "Comparecencia Especial en solicitud de Orden urgente sobre nulidad de anotación de embargo preventivo".[6] En éste, expuso que el 7 de julio de 2000 ella advino dueña -en virtud de una escritura de liquidación de sociedad legal de gananciales- del inmueble que luego quedó gravado por la anotación preventiva de embargo a favor del recurrido González, la cual fue presentada en el Registro de la Propiedad, como señalamos, el 17 de junio de 2002. La peticionaria Nieves expresó que se percató de la existencia de esa anotación preventiva mediante un estudio de título realizado en febrero de 2003.[7]

---

[6] Según consta del escrito, la peticionaria Nieves incluyó como anejos una copia simple de la escritura de liquidación de bienes gananciales y una copia de un estudio de título realizado en febrero de 2003. Véase Apéndice de la Petición de *certiorari*, págs. 181-182. Aunque tales documentos no fueron incluidos en la Petición de *certiorari*, sí pudimos examinarlos en los autos del caso DAC-1999-0391.

[7] De acuerdo con el estudio de título, el cual consta en los autos del caso DAC-1999-0391, los siguientes documentos se encontraban presentados y pendientes de despacho: (1) AL ASIENTO 184 DEL DIARIO 1079, se presentó el día 20 de julio de 2000, la escritura número 24, otorgada en Bayamón, Puerto Rico, el día 7 de julio de 2000, ante el notario Pedro Hernández Vázquez, sobre liquidación de bienes gananciales, a favor de Ana Rosa Nieves Díaz, por la suma de $2,500.00; y (2) AL ASIENTO 200 DEL DIARIO 1168, se presentó el día 17 de junio de 2002, sobre anotación de embargo preventivo, en la suma de $23,595.00, expedida en el Tribunal Superior, Sala de Bayamón, caso civil número DAC99-0391. Se indicó que tales datos fueron tomados del Diario de Operaciones debido a que no estaba disponible el documento al momento de realizarse el estudio de título.

Asimismo, manifestó que el recurrido González indujo a error al foro de instancia a emitir la anotación preventiva sobre el mencionado inmueble, pues si hubiera realizado un estudio de título se hubiese percatado que desde el 7 de julio de 2000 éste no pertenecía a Rodríguez Bracero. La peticionaria Nieves también alegó que procedía la nulidad de esa anotación preventiva, ya que ella nunca fue parte en el pleito. Además, indicó que esa anotación le había impedido disponer del inmueble y le había creado perjuicio económico y emocional, por lo que solicitó que se retirara tal anotación preventiva.

El recurrido González, en junio de 2003, se opuso a la solicitud de la peticionaria Nieves, pues planteó que del estudio de título realizado el 20 de agosto de 2001 no surgía la presentación de la escritura de liquidación de sociedad legal de gananciales mediante la cual alegadamente la peticionaria Nieves advino dueña del inmueble.[8] También expuso que podía configurarse el fraude de acreedores debido a que esa escritura fue otorgada el 7 de julio de 2000, o sea, en una fecha posterior a la sentencia emitida por el tribunal de instancia el 18 de agosto de 1999. Así, pues, el recurrido González solicitó que el foro de instancia citara para vista, desestimara la solicitud de la peticionaria Nieves y obligara a ésta a satisfacer la sentencia, pues ella "era o es todavía la esposa del

---

[8] Es importante señalar que el recurrido González solicitó el aseguramiento de sentencia el 14 de febrero de 2002 y el estudio de título al que hizo referencia es del 20 de agosto de 2001, o sea, un estudio de casi 6 meses antes de la fecha de la solicitud.

señor [Rodríguez Bracero] y la sociedad legal de gananciales compuesta por ambos es responsable por la sentencia que recayó sobre ellos el 18 de agosto de 1999…".[9]

En octubre de 2003, el tribunal de instancia concedió término para que la peticionaria Nieves presentara una certificación registral del inmueble en controversia y para que el recurrido González comenzara el descubrimiento de prueba.[10] Así las cosas, la peticionaria Nieves presentó la certificación registral[11] y adujo que tenía una causa de acción por daños y perjuicios contra el recurrido González, por lo que anticipó que desfilaría su prueba de daños en la

---

[9] Véase Apéndice de la Petición de *certiorari*, págs. 183-186.

[10] Según surge de la minuta de la vista, la abogada de la peticionaria Nieves expuso que el embargo era nulo desde su origen, que no se emplazó a la sociedad legal de gananciales y que su clienta nunca fue parte en el caso presentado por el D.A.Co. Además, presentó copia certificada de la sentencia de divorcio (dictada el 3 de febrero de 2000 y reducida a escrito el 20 de marzo de 2000) y copia de la minuta del asiento de presentación de la escritura de liquidación de sociedad legal de gananciales. La abogada de la peticionaria Nieves nuevamente solicitó que se dejara sin efecto la anotación preventiva de embargo e indicó que presentaría una causa de acción por daños y perjuicios.
   Por su parte, el abogado del recurrido González reiteró que para el 1999 (fecha en que se dictó la sentencia del caso DAC-1999-0391) aún no había ocurrido el divorcio entre la peticionaria Nieves y Rodríguez Bracero. Además, señaló que la peticionaria Nieves debía presentar una certificación registral del inmueble en controversia, ello en lugar de un estudio de título. Véase Apéndice de la Petición de *certiorari*, págs. 189-191.

[11] Aunque en la Petición de *certiorari* no se anejó copia de la certificación registral del inmueble, pudimos evaluar los autos del caso DAC-1999-0391. En lo pertinente, el Registrador de la Propiedad de la Sección Primera de Bayamón certificó que, al 20 de octubre de 2003, la finca constaba inscrita a favor de Ana Rosa Nieves Díaz. La inscripción novena refleja que, mediante la escritura de liquidación de sociedad de bienes gananciales otorgada ante notario el 7 de julio de 2000, Rodríguez Bracero vendió y cedió el 50% del inmueble a la peticionaria Nieves; tal escritura fue presentada al asiento 184 del diario 1079 el 20 de julio de 2000. El Registrador de la Propiedad también certificó que se encontraba pendiente de calificación y despacho un documento sobre "anotación de embargo preventivo" en el caso Civil Núm. DAC-1999-0391, el cual fue presentado el 17 de junio de 2002.

vista del 27 de febrero de 2004.[12]  Luego de 3 suspensiones, la vista fue pautada para el 24 de agosto  de 2004.[13]

Finalmente, el 24 de agosto de 2004, el foro de instancia determinó dejar sin efecto la orden de embargo preventivo y así lo hizo constar en una resolución del 7 de noviembre de 2004, notificada el 24 del mismo mes y año.  El tribunal de instancia indicó que aunque al momento en que fue dictada la orden de embargo se estableció –mediante estudio de título– que el inmueble gravado pertenecía a Rodríguez Bracero y a la peticionaria Nieves, luego de que se presentara una certificación registral quedó demostrado que la peticionaria Nieves era la única titular del inmueble al momento del embargo.  Además, el foro de instancia señaló que su determinación era sin perjuicio de que la parte demandante (el recurrido González) identificara bienes en los que pudiera ejecutarse la sentencia dictada a su favor el 18 de agosto de 1999.

---

[12] La peticionaria Nieves señaló que la sentencia dictada era ejecutable sólo contra los bienes de su ex esposo, Rodríguez Bracero. Reiteró que ni en el caso administrativo ni en el caso DAC-1999-0391 ni en el emplazamiento ni en su diligenciamiento se mencionó a la sociedad legal de gananciales y, además, tampoco se expresó que se estuviera emplazando a la sociedad legal de gananciales por conducto de uno de los cónyuges. Véase Apéndice de la Petición de certiorari, págs. 192-193.

[13] Según surge de los autos originales del caso DAC-1999-0391, la suspensión de la vista del 27 de febrero de 2004 fue debido a la incomparecencia del abogado del recurrido González. Mientras, a la vista del 30 de abril de 2004 el recurrido González compareció con otro abogado, el Lcdo. Julio Berríos Jiménez, quien se percató de que había intervenido como juez en el caso y retiró su comparecencia. Por todo lo cual, el foro de instancia reseñaló la vista para el 21 de junio de 2004 y apercibió al recurrido González de que debía comparecer con representación legal o se atendería el caso sin abogado y se "pasará vista evidenciaria de la parte interventora". A pesar del apercibimiento, el recurrido González acudió sin abogado a la vista pautada para el 21 de junio de 2004, por lo que ésta fue pospuesta para el 24 de agosto de 2004.

De esta determinación no se solicitó reconsideración ni revisión judicial.

**B. Los hechos del caso Civil Núm. DDP-2004-0055**

El 2 de marzo de 2004, la peticionaria Nieves presentó una demanda de daños y perjuicios contra el recurrido González, su esposa y la sociedad legal de gananciales compuesta por ambos.[14] Como expuso en su comparecencia especial en el caso DAC-1999-0391, la peticionaria Nieves indicó que era la titular registral de la propiedad gravada por la anotación preventiva de embargo a favor del recurrido González y que se percató de esa anotación preventiva mediante un estudio de título.[15] También, señaló que no fue parte del pleito en el que se ordenó esa anotación preventiva y fundamentó su causa de acción en que el acto de embargar —independientemente de si se perfeccionó o no el embargo— da lugar a la imposición de responsabilidad cuando han ocurrido actos injustificados (mediando descuido o negligencia) por parte de quien opte por usar el mecanismo de embargo para asegurar la efectividad de una sentencia.

La peticionaria Nieves manifestó que, como consecuencia de la culpa y negligencia de la parte demandada, había enfrentado sufrimientos y angustias

---

[14] Esta demanda fue presentada antes de que el tribunal de instancia dejara sin efecto la orden de embargo en el procedimiento postsentencia del caso DAC-1999-0391. Recordemos que tal determinación fue en agosto de 2004 y se hizo constar en una resolución de noviembre de 2004.

[15] Como señalamos, la anotación preventiva de embargo era por la cantidad de $23,595.

mentales que se estimaban en una suma no menor de $50,000. Alegó que como parte de los daños estaba el hecho de que se vio imposibilitada de refinanciar la deuda hipotecaria que gravaba el inmueble, ello con el fin de ayudar económicamente con unas intervenciones quirúrgicas que eran necesarias para atender la condición de salud de un nieto. Por todo lo cual, solicitó que se declarara con lugar su demanda y se condenara a la parte demandada al pago de la cantidad reclamada, costas, gastos, honorarios de abogado e intereses legales desde la presentación de la demanda.[16]

Luego de varios trámites interlocutorios, finalmente el recurrido González presentó su contestación a la demanda el 17 de noviembre de 2004, en la que negó cualquier responsabilidad por los hechos alegados y reconvino para reclamar –entre otras partidas– el pago de la cantidad adjudicada en la sentencia del 18 de agosto de 1999 más los intereses legales acumulados. Específicamente alegó lo siguiente en la reconvención:

> La parte demandada reconviene a la parte demandante por la totalidad de las sumas adejudicadas [sic] or [sic] la sentencia fial [sic] y firme que oportunamente dicto [sic] el Honorable Tribunal de Primera InstanciaSala de Bayamon [sic] en contra de su ex esposo ANGEL A ALICEA RIVERA HNC A R CONSTRUTION [sic] el cual ya hacia [sic] negocios por muchos anos [sic] a favor y para beneficio de la sociedad de gananciales bajo el nombre comercial de A R CONSTRUCTIONS. La sentencia final y firme de la cual solicitamos respetuosamente se tome conocimiento judicial, fue dictada por el Honorable Tribunal de PrimeraInstancia [sic] el

---

[16] Véase Apéndice de la Petición de *certiorari*, págs. 18-20.

> diam [sic] 18 de agosto de 1998 [sic] bajo el NUM. DAC 1999-0391. dicha [sic] sentencia fue dictasda [sic] por la Hon. Olivette Sagebien Raffo.  El divorcio y la liquidación de bienes gananciales constituida entre la demandante y Angel Rodríguez Bracero fue muy posterior a la Querella y sentencia en el caso resuelto por la Jueza Sagebien por lo que claramente se trata de una actuación ilegal en fraude de acreedores.[17]

Mientras, en su réplica la peticionaria Nieves negó la única alegación expuesta por el recurrido González (el párrafo arriba reseñado) y solicitó que se declarara no ha lugar a la reconvención.  Véase Apéndice de la Petición de *certiorari*, pág. 31.

Así las cosas, el 21 de marzo de 2005 el recurrido González presentó una moción de sentencia sumaria en la que expuso que no procedía la causa de acción presentada por la peticionaria Nieves, pues "[n]o existe el alegado daño y menos aún existe negligencia de clase alguna".  Adujo, también, que "al ser de naturaleza ganancial tanto el inmueble embargado como la deuda de $23,595.00 que consta de una sentencia judicial no procede en derecho que se reclame embargo ilegal o negligencia por haber embargado la finca para cobrar una deuda ganancial".  Añadió que "[e]l acuerdo entre los dos ex cónyuges no tiene el efecto de privar al acreedor de una deuda ganancial contraída

---

[17] Véase Apéndice de la Petición de *certiorari*, págs. 26-29.

durante la vigencia del matrimonio de su derecho de cobrar de los bienes gananciales".[18]

Por todo lo cual, el recurrido González solicitó que el tribunal de instancia: (1) dictara sentencia sumaria desestimando como cuestión de derecho la demanda en su totalidad; (2) declarara con lugar la reconvención; y (3) condenara a la peticionaria Nieves al pago de la deuda de $23,595.00 más los intereses legales acumulados. El recurrido González no acompañó documento alguno junto a su solicitud de sentencia sumaria.

El 1 de abril de 2005, el foro de instancia concedió un término de 20 días para que la peticionaria Nieves se expresara en torno a la solicitud de sentencia sumaria presentada por el recurrido González; esta orden fue notificada el 14 de abril de 2005. A pesar del término concedido a la peticionaria Nieves (el cual vencía el 4 de mayo de 2005), el tribunal de instancia dictó sentencia sumaria el 15 de abril de 2005, notificada el 1 de junio de 2005.

---

[18] El recurrido González admitió que en el caso DAC-1999-0391 no se utilizó el mecanismo procesal adecuado, por lo que no había jurisdicción sobre la peticionaria Nieves ni sobre la sociedad legal de gananciales constituida por ésta y Rodríguez Bracero; que el mecanismo adecuado debió ser un nuevo pleito de cobro de dinero en ejecución de sentencia.

Además, expresó que "[e]l presente caso reúne todos los requisitos para que el Tribunal dicte sentencia contra la sociedad legal de gananciales y contra los componentes del extinto matrimonio quien debe responder [al recurrido González] y la sociedad legal de bienes gananciales que éste tiene constituida con su esposa por la suma del dinero que se les adeuda". Véase Apéndice de la Petición de *certiorari*, págs. 51-56.

En su sentencia, el foro de instancia determinó que tanto el inmueble ganancial que perteneció a los ex cónyuges (y que fuera objeto de la anotación preventiva de embargo) como todos los bienes de la peticionaria Nieves respondían de la deuda a favor del recurrido González. Además, manifestó que la escritura de liquidación de sociedad de bienes gananciales fue efectuada de manera ilegal, por lo que carecía de validez frente a acreedores legítimos como el recurrido González. Por todo lo anterior, mediante una sentencia sumaria total, el tribunal de instancia desestimó la demanda de la peticionaria Nieves y declaró con lugar la reconvención del recurrido González. Así las cosas, condenó a la peticionaria Nieves al pago de la deuda de $23,595.00 más los intereses legales acumulados, honorarios de abogado y las costas del litigio.[19]

Dentro del término que le fue concedido y antes de que le fuera notificada la sentencia del 15 de abril de 2005, la peticionaria Nieves se opuso a la moción de sentencia sumaria el 4 de mayo de 2005. Entre otros asuntos, expuso que el dinero pagado por el recurrido González a Rodríguez Bracero no fue para el sostén del hogar, pues ella y este último estaban separados desde 1996 y ella tenía una orden de protección a su favor. Además, reiteró que no fue parte del pleito en el que se ordenó la anotación preventiva

---

[19] Véase Apéndice de la Petición de *certiorari*, págs. 67-74.

de embargo, por lo que la presentación de ese documento en el Registro de la Propiedad fue nula y así se reconoció en la resolución del 7 de noviembre de 2004 en el caso DAC-1999-0391. Junto a su oposición, la peticionaria Nieves acompañó copia de la orden de protección y copia de la mencionada resolución.[20] La peticionaria Nieves solicitó que el foro de instancia denegara la moción de sentencia sumaria del recurrido González, pero resolviera sumariamente a favor de ella y señalara una vista de daños.[21] Esta moción en oposición fue denegada el 1 de junio de 2005 y se indicó lo siguiente: "CASO CON SENTENCIA DICTADA EL 15 DE ABRIL DE 2005".

Oportunamente, la peticionaria Nieves presentó su solicitud de reconsideración, en la cual señaló que el tribunal de instancia emitió la sentencia sumaria sin antes considerar el escrito de oposición que ella había presentado, ello a pesar de que el propio tribunal le concedió término para que se expresara. También indicó que el recurrido González no sometió ningún documento en apoyo a sus alegaciones en la moción de sentencia sumaria y, además, manifestó que existían controversias de hechos en

---

[20] Véase Apéndice de la Petición de *certiorari*, págs. 59-66.

[21] Según la peticionaria Nieves, aunque existía controversia sobre varios hechos alegados por el recurrido González, éste reconoció que no había controversia sobre los hechos medulares que dieron lugar a la causa de acción: (1) que a la fecha de la anotación preventiva de embargo, el inmueble estaba inscrito a nombre de la peticionaria Nieves; y (2) que la peticionaria Nieves no fue parte en el pleito ante el D.A.Co. ni en el procedimiento judicial para hacer cumplir la orden de esa agencia administrativa (caso DAC-1999-0391). Véase Apéndice de la Petición de *certiorari*, págs. 59-63.

cuanto a lo planteado por éste, por lo que no procedía que el tribunal de instancia dictara sentencia sumaria a favor del recurrido González. Luego de que el recurrido González presentara su oposición, el 8 de agosto de 2005 el foro de instancia denegó la solicitud de reconsideración.[22]

Inconforme con la decisión del tribunal de instancia, el 6 de septiembre de 2005 la peticionaria Nieves presentó su apelación ante el Tribunal de Apelaciones. Ese foro apelativo dictó sentencia el 14 de octubre de 2005, mediante la cual modificó el dictamen del tribunal de instancia a los efectos de revocar aquella parte que declaró con lugar la reconvención presentada por el recurrido González, esto por entender que existían controversias de hechos que impedían la disposición sumaria del asunto. Específicamente, el Tribunal de Apelaciones indicó que existían controversias de hechos en cuanto a: (1) la presunción de ganancialidad de la deuda; y (2) la validez de la escritura de liquidación de sociedad legal de gananciales. En cuanto al primer aspecto, señaló que la alegación de la peticionaria Nieves acerca de que la deuda contraída no era ganancial debido a que ella no se benefició de ese dinero "… crea indudablemente una controversia de hecho, ya que de ser cierta, estaría rebatiendo la presunción de ganancialidad derivada del Art. 1308 del Código Civil…". Respecto al segundo asunto,

---

[22] Esta determinación fue notificada el 11 de agosto de 2005. Véase Apéndice de la Petición de *certiorari*, pág. 88.

expresó que difería de la determinación del foro de instancia en torno a que la mencionada escritura carecía de validez, pues el acreedor (el recurrido González) nunca presentó prueba para sustentar fraude en la liquidación de los bienes, por lo que "… no procedía allegar a esta determinación sumariamente".[23]

Por otro lado, el Tribunal de Apelaciones sostuvo la determinación relacionada con la desestimación de la demanda instada por la peticionaria Nieves. Así, pues, el Tribunal de Apelaciones ordenó la continuación de los procedimientos en el tribunal de instancia. Luego, tanto la peticionaria Nieves como el recurrido González presentaron sus respectivas mociones de reconsideración, mas ese foro apelativo denegó ambas.

Insatisfecha con la sentencia del Tribunal de Apelaciones, la peticionaria Nieves recurre ante esta Curia y señala los siguientes 2 errores:

(1) Erró el Tribunal de Apelaciones al confirmar al Tribunal de Primera Instancia, el cual desestimó mediante sentencia sumaria la demanda de daños y perjuicios por la actuación negligente o culposa del demandado (recurrido González) consistente en hacer que se presentara al Registro de la Propiedad una anotación preventiva de embargo sobre la casa de la demandante (la peticionaria Nieves), en relación a un pleito en el que ella no fue parte;

(2) Erró el Tribunal de Apelaciones al expresar en la página 23 de la sentencia lo siguiente: "En el caso de autos, luego de un análisis de los documentos que obran en el expediente, y que acompañaron la solicitud de sentencia sumaria y su oposición,

---

[23] Véase Apéndice de la Petición de *certiorari*, págs. 150-173.

estamos ante una situación donde existen controversias de hechos en cuanto a la presunción de ganancialidad y a la validez de la Escritura de Liquidación de Sociedad de Bienes Gananciales. El récord está huérfano de documentos necesarios para la resolución del pleito".

En enero de 2006 acogimos el recurso como una solicitud de *certiorari* y expedimos el auto. Luego de examinar el expediente, los autos originales del foro de instancia y los alegatos de ambas partes, procedemos a resolver el caso de epígrafe.

## II

### A. Los remedios provisionales para asegurar la efectividad de una sentencia

La Regla 56 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 56, regula los mecanismos y procedimientos que un demandante tiene a su alcance para asegurar la efectividad de la sentencia que ha obtenido a su favor o que anticipa obtener. Mediante una moción al tribunal, ya sea antes o después de dictada la sentencia, el reclamante solicitará el remedio provisional que considere apropiado para asegurar la ejecución de la sentencia. No obstante, la Regla 56.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 56.1, le otorga discreción al tribunal para conceder o denegar tal remedio o medida cautelar.

En el ejercicio de su discreción, el tribunal tomará en cuenta los siguientes criterios al momento de conceder alguno de estos remedios: (1) que sean provisionales; (2) que tengan el propósito de asegurar la efectividad de la sentencia que en su día se pueda dictar; y (3) que se

tomen en consideración los *intereses de todas las partes*, según lo requiera la justicia sustancial y las circunstancias del caso. (Énfasis en el original.) Freeman v. Tribunal Superior, 92 D.P.R. 1, 25-26 (1965).

Como regla general, se requiere la prestación de una fianza por parte de aquella persona que solicite una medida de aseguramiento de sentencia, ello para responder por los daños y perjuicios que se puedan ocasionar como consecuencia del aseguramiento. Sin embargo, conforme establece la Regla 56.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 56.3, el tribunal puede conceder un remedio provisional sin la prestación de la fianza en las siguientes circunstancias: (1) cuando la obligación es legalmente exigible y así surge de un documento público o privado otorgado ante una persona autorizada a tomar juramentos; (2) cuando se trata de un litigante insolvente que reúne las condiciones expresadas en la Regla 56.3 de Procedimiento Civil; o (3) cuando se gestiona el remedio después de la sentencia. Esta última excepción descansa en la presunción de corrección de que gozan las sentencias en nuestra jurisdicción. Vargas v. González, 149 D.P.R. 859, 866 (1999).

Entre los remedios provisionales que puede conceder el tribunal se encuentran: el embargo, la prohibición de enajenar, el embargo de fondos en posesión de un tercero, la reclamación y entrega de bienes muebles, la sindicatura y la orden para hacer o desistir de hacer algún acto

específico. El tribunal también tiene discreción para ordenar cualquier medida que estime apropiada, según las circunstancias del caso. Regla 56.1 de Procedimiento Civil, *supra*.

En cuanto al mecanismo del embargo, se ha establecido que éste constituye una interdicción jurídica en el patrimonio del deudor, la cual se decreta a petición ex parte del acreedor reclamante. Entre los efectos procesales de este mecanismo está el sujetar los bienes embargados al cumplimiento de la obligación o reclamación en el proceso principal, esto es asegurar la efectividad de la sentencia que pueda dictarse si prospera la acción presentada. Por tanto, la eficacia de esta medida cautelar depende de la acción ejercitada. Alum v. Campos del Toro, 89 D.P.R. 305, 321 (1963).

Según la Regla 56.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 56.4, el embargo puede efectuarse tanto sobre bienes muebles como bienes inmuebles; en el caso de estos últimos se anotará en el Registro de la Propiedad y se notificará al demandado. En cuanto al procedimiento del embargo de un bien inmueble, nos menciona el profesor Hernández Colón que "[l]uego de emitida la orden de embargo por el tribunal y presentada la fianza si fuera necesaria, el Secretario expide un mandamiento de embargo a ser diligenciado en torno al Registrador de la Propiedad correspondiente quien practicará la correspondiente anotación preventiva si el objeto de

embargo fuera un inmueble". R. Hernández Colón, Práctica Jurídica de Puerto Rico: Derecho Procesal Civil, 4ta ed., San Juan, Ed. Lexisnexis, 2007, Sec. 1407, pág. 152.

El Art. 112(2do) de la Ley Hipotecaria y del Registro de la Propiedad de 1979, 30 L.P.R.A. sec. 2401(2do), estatuye la llamada anotación preventiva de embargo y es el medio a través del cual esta anotación tiene acceso al Registro de la Propiedad. Pérez Mercado v. Martínez Rondón, 130 D.P.R. 134, 143 (1992). Tal artículo "autoriza la anotación preventiva cuando el reclamante obtiene mandamiento de embargo sobre bienes inmuebles del deudor demandado". L. R. Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, 2da ed., San Juan, Jurídica Editores, 2002, pág. 461.

Citando al profesor Herminio Brau del Toro, en Pérez Mercado v. Martínez Rondón, supra, pág. 146, indicamos que la anotación preventiva de embargo no crea ni declara derecho alguno a favor del anotante, no altera la naturaleza de las obligaciones ni puede convertir en real e hipotecaria la acción que carezca de este carácter y no reserva rango como la mención.[24] Además, expresamos que esta anotación preventiva se refiere a acciones que no conllevan modificación o extinción de algún derecho inscrito. Íd. Por tanto, debe quedar claro que el objetivo principal de esta anotación preventiva es asegurar

---

[24] Véase, además, VELCO v. Industrial Serv. Apparel, 143 D.P.R. 243, 249 (1997).

el crédito de un acreedor del titular del bien inscrito. Pérez Mercado v. Martínez Rondón, *supra*, pág. 151.

En cuanto a los efectos jurídicos de la anotación preventiva de embargo, Díez-Picazo y Gullón nos mencionan que esta anotación "produce una afección de los terceros adquirentes o titulares de derechos reales sobre el bien embargado, siempre que sus títulos *tengan fecha posterior a la anotación*. En cambio, quedan inmunes si sus títulos son de fecha anterior, aunque inscriban *con posterioridad a la anotación*". (Énfasis en el original.) L. Díez-Picazo y A. Gullón, Sistema de Derecho Civil, 4ta ed., Madrid, Ed. Tecnos, 1989, Vol. III, págs. 331-332. Esto es, un título anterior a la anotación preventiva de embargo prevalece sobre ésta aunque se inscriba posteriormente en el Registro de la Propiedad. Pérez Mercado v. Martínez Rondón, *supra,* pág. 147.

El Art. 117.2 del Reglamento General para la ejecución de la Ley Hipotecaria y del Registro de la Propiedad de 1979, Reglamento Núm. 2674, Departamento de Justicia, 9 de julio de 1980, según enmendado (Reglamento de la Ley Hipotecaria), establece que:

> *En ningún caso se practicará anotación preventiva de embargo*, secuestro o prohibición de enajenar sobre finca no inmatriculada, sin perjuicio de que dicha finca se entienda sujeto a dichos gravámenes.
> *Tampoco se anotarán los gravámenes antes mencionados si el título sobre la finca inmatriculada apareciere inscrito a favor de persona distinta al demandado.* (Énfasis nuestro.)

## B. El Art. 1802 del Código Civil y la causa de acción por embargo ilegal

En nuestro ordenamiento jurídico, las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia. Art. 1042 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 2992. Aquellas obligaciones que nacen de la culpa o la negligencia se rigen por lo dispuesto en el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, el cual establece que: "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado".[25]

En reiteradas ocasiones hemos expresado que para que prospere una reclamación en daños y perjuicios al amparo del Art. 1802 del Código Civil, *supra*, se requiere la concurrencia de los siguientes 3 elementos, los cuales tienen que ser probados por la parte demandante: (1) el acto u omisión culposa o negligente; (2) la relación causal entre el acto u omisión culposa o negligente y el daño ocasionado; y (3) el daño real causado al reclamante.[26]

---

[25] Esta disposición estatutaria consagra 2 principios fundamentales en el campo de la responsabilidad civil extracontractual (también conocida como responsabilidad *ex delicto* o responsabilidad aquiliana): (1) el deber del individuo en su vida de relación social de no causarle daño a otro; y (2) el deber de compensarle si se lo causare. Véase Rivera v. Maryland Casualty Co., 96 D.P.R. 807, 810 (1968).

[26] Refiérase a López v. Porrata Doria, 169 D.P.R. 135, 150 (2006); Pons v. Engebretson, 160 D.P.R. 347, 354 (2003); Ortiz Torres v. K & A Developers, Inc., 136 D.P.R. 192, 197 (1994); Soc. Gananciales v. G. Padín Co., Inc., 117 D.P.R. 94, 106 (1986); Hernández v. Fournier, 80 D.P.R. 93, 96 (1957).

En cuanto al primer requisito, este Tribunal ha expresado que el concepto "culpa" del Art. 1802 del Código Civil, *supra*, es tan amplio y abarcador como suele ser la conducta humana e incluye cualquier falta de una persona que produce un mal o daño. López v. Porrata Doria, 169 D.P.R. 135, 150 (2006).[27] Esto es, la culpa incluye todo tipo de transgresión humana, tanto en el orden legal como en el orden moral, por lo que –como menciona Scaevola– el "actuar que da lugar a responsabilidad civil ha de ser ilícito, contrario a la ley, orden público o buenas costumbres…". (Citas omitidas.) Íd.[28]

Según hemos enfatizado, la culpa o negligencia es la falta del debido cuidado, que a la vez consiste esencialmente en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. Valle v. E.L.A., 157 D.P.R. 1, 18 (2002); Ramos v. Carlo, 85 D.P.R. 353, 358 (1962).

A través de la jurisprudencia observamos que un elemento esencial de la responsabilidad civil extracontractual es el factor de la previsibilidad. Para determinar si el resultado era razonablemente previsible, es preciso acudir a la figura del hombre prudente y razonable, también conocida como el buen padre de familia,

---

[27] Véanse, también, Toro Aponte v. E.L.A., 142 D.P.R. 464, 473 (1997); Reyes v. Sucn. Sánchez Soto, 98 D.P.R. 305, 310 (1970).

[28] Véase, además, Valle v. E.L.A., 157 D.P.R. 1, 20 (2002).

que es aquella persona que actúa con el grado de cuidado, diligencia, vigilancia y precaución que exigen las circunstancias. Pons v. Engebretson, 160 D.P.R. 347, 355 (2003); Monllor v. Soc. de Gananciales, 138 D.P.R. 600, 604 (1995).

El elemento de la previsibilidad se halla íntimamente relacionado al segundo requisito: el nexo causal.[29] En Puerto Rico rige la teoría de la causalidad adecuada, la cual postula que "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general".[30] En Rivera v. S.L.G. Díaz, 165 D.P.R. 408, 422 (2005), señalamos que la relación causal, elemento imprescindible en una reclamación en daños y perjuicios, es un elemento del acto ilícito que vincula al daño directamente con el hecho antijurídico.[31]

En torno al tercer requisito, el daño, hemos manifestado que éste constituye el menoscabo material o moral que sufre una persona, ya sea en sus bienes vitales naturales, en su propiedad o en su patrimonio, causado en contravención a una norma jurídica y por el cual ha de

---

[29] Refiérase a Rivera v. S.L.G. Díaz, 165 D.P.R. 408, 422 (2005); Valle v. E.L.A., 157 D.P.R. 1, 19 (2002).

[30] Véanse Jiménez v. Pelegrina Espinet, 112 D.P.R. 700, 704 (1982); Soc. de Gananciales v. Jerónimo Corp., 103 D.P.R. 127, 134 (1974).

[31] Este Tribunal ha establecido que un daño podrá considerarse como el resultado natural y probable de un acto u omisión negligente si después del suceso —mirándolo retrospectivamente— éste parece ser la consecuencia razonable y común de la acción u omisión de que se trate. (Énfasis omitido.) Santiago v. Sup. Grande, 166 D.P.R. 796, 818 (2006); Toro Aponte v. E.L.A., 142 D.P.R. 464, 474 (1997).

responder otra persona. Ramírez Ferrer v. Conagra Foods PR, res. el 14 de abril de 2009, 2009 T.S.P.R. 55, 175 D.P.R. ___ (2009).[32] En nuestro ordenamiento jurídico se reconoce la existencia de 2 tipos de daños: (1) los daños especiales (también conocidos como daños físicos, patrimoniales, pecuniarios o económicos); y (2) los daños generales (también conocidos como daños morales).

Los daños especiales se refieren a toda aquella pérdida que recae sobre bienes objetivos, pues estos daños admiten valoración económica debido a que impactan directamente el patrimonio del perjudicado. Rivera v. S.L.G. Díaz, supra, pág. 428. Mientras, los daños generales son los infligidos a las creencias, los sentimientos, la dignidad, la estima social o la salud física o psíquica del perjudicado. Íd. La valoración de los daños generales descansa en la sana discreción del juzgador basada en los hechos que considere probados. C. J. Irizarry Yunqué, Responsabilidad Civil Extracontractual, 6ta ed., Colombia, Panamericana Formas e Impresos S.A., 2007, pág. 301.

Por otro lado, aunque el derecho de daños en Puerto Rico se rige por las normas del derecho civil,[33] a través de la jurisprudencia hemos reconocido y aplicado en nuestra

___

[32] Véanse, además, García Pagán v. Shiley Caribbean, etc., 122 D.P.R. 193, 205-206 (1988); J. Santos Briz y otros, Tratado de Derecho Civil: Teoría y Práctica, 1era ed., Barcelona, Ed. Bosch, 2003, T. III, pág. 457.

[33] Véanse Admor. F.S.E. v. Almacén Ramón Rosa, 151 D.P.R. 711, 716 (2000); Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8, 15-16 (1987); Valle v. Amer. Inter. Ins. Co., 108 D.P.R. 692, 695 (1979); Gierbolini v. Employers Fire Ins. Co., 104 D.P.R. 853, 855 (1976).

jurisdicción algunas causas de acción que provienen del derecho común angloamericano o *common law* y que se tipifican a base de la conducta intencional con la que se produjo el daño. Algunas de estas causas de acción son las siguientes: acometimiento y agresión, restricción ilegal de la libertad (también conocida como detención ilegal), persecución maliciosa, embargo ilegal, culpa *in contrahendo*, interferencia culposa con obligaciones contractuales de otro y contrato en daño de tercero.

Específicamente, la causa de acción por embargo ilegal es una acción *ex delicto* basada en el Art. 1802 del Código Civil, *supra*, y su fin es recobrar los daños y perjuicios causados por un alegado embargo ilegal.[34] Berríos v. International Gen. Electric, 88 D.P.R. 109, 117 (1963). Según pautamos en Martí v. Hernández, 57 D.P.R 819, 823 (1940), para que proceda una causa de acción para recobrar daños y perjuicios por un alegado embargo ilegal la parte demandante tiene que alegar y probar: (1) que sus bienes fueron embargados; (2) que la acción presentada en su contra y en la cual se decretó el embargo culminó con sentencia firme a su favor; y (3) los daños sufridos.[35]

---

[34] La acción *ex delicto* implica el quebrantamiento de un deber impuesto por la ley que ordinariamente surge a raíz de un acto negligente o culpable sin referencia a un contrato celebrado entre las partes. Mientras, la acción *ex contractu* se basa en el quebrantamiento de un deber que surge de un contrato expreso o implícito. Mejías v. López, 51 D.P.R. 21, 26 (1937). Véase, también, Cintrón v. Insular etc., y Balbaño, 58 D.P.R. 821, 827 (1941).

[35] Véanse, también, Rodón v. Fernández Franco, 105 D.P.R. 368, 370 (1976); Frigorífico M. H. Ortiz v. Quiles, 101 D.P.R. 676, 688 (1973); Berríos v. International Gen. Electric, 88 D.P.R. 109, 117 (1963).

En <u>Berríos v. International Gen. Electric</u>, *supra*, pág. 118, resolvimos que –independientemente de si se hubiera perfeccionado o no el embargo– los hechos del caso daban lugar a la imposición de responsabilidad en virtud del Art. 1802 del Código Civil, *supra*, pues hubo actos injustificados por parte de la demandada-recurrente (International General Electric, P.R., Inc.), mediando descuido o negligencia y, además, se probaron daños.[36]

## C. El mecanismo de la sentencia sumaria

En múltiples ocasiones hemos mencionado que la sentencia sumaria es un mecanismo procesal cuyo propósito principal es facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales y, por lo tanto, no ameritan la celebración de un juicio en su fondo. <u>Sucn. Maldonado v. Sucn. Maldonado</u>, 166 D.P.R. 154, 184 (2005).[37] Recientemente, este Tribunal expuso que "[a]unque en el pasado nos hemos referido a este mecanismo procesal catalogándolo como 'extraordinario', ello no lo excluye de aplicación en determinado tipo de litigio". <u>Ramos Pérez v. Univisión de P.R</u>., res. el 3 de febrero de 2010, 2010 T.S.P.R. 15, 178 D.P.R. ____. Añadimos que la sentencia sumaria es "una excepción al juicio mediante testimonios

---

[36] En ese caso resolvimos que aunque nunca llegó a trabarse el embargo sobre los bienes muebles de la parte demandante-recurrida, la compañía demandada sí era responsable al amparo del Art. 1802 del Código Civil, *supra*, ya que había actuado de manera descuidada o negligente.

[37] Véanse, además, <u>S.L.G. v. S.L.G.</u>, 150 D.P.R. 171, 193 (2000); <u>Pilot Life Ins. Co. v. Crespo Martínez</u>, 136 D.P.R. 624, 632 (1994).

'vivos' frente al juzgador de hechos". Íd. En nuestro ordenamiento jurídico es la Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36, la que provee para que pueda dictarse una sentencia sumaria. Esta regla permite que cualquiera de las partes en litigio solicite que el tribunal dicte sentencia sumaria a su favor, ya sea sobre la totalidad o cualquier parte de la reclamación solicitada.[38]

Ya esta Curia ha señalado que sólo procede dictar sentencia sumaria cuando surge de manera clara que el promovido por la solicitud no puede prevalecer bajo ningún supuesto de hechos (esto es, que no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de la evidencia) y que el tribunal cuenta con la verdad sobre todos los hechos necesarios para resolver la controversia ante su consideración. E.L.A. v. Cole, 164 D.P.R. 608, 625 (2005); S.L.G. v. S.L.G., 150 D.P.R. 171, 193 (2000).[39] Cualquier duda no es suficiente para derrotar una solicitud de sentencia sumaria, sino que tiene que ser una duda que permita concluir que existe una **controversia real y sustancial** sobre hechos relevantes y

---

[38] En particular, la Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.3, expone que "la sentencia solicitada se dictará inmediatamente si las alegaciones, [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente".

[39] Véanse, también, Mgmt. Adm. Servs. Corp. v. E.L.A., 152 D.P.R. 599, 610 (2000); Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714, 720-721 (1986).

pertinentes. (Énfasis en el original.) Ramos Pérez v. Univisión de P.R., *supra*. Es decir, si hay una disputa real y sustancial sobre la existencia de algún hecho material, entonces el tribunal no puede emitir una adjudicación de forma sumaria.

La parte que solicita la sentencia sumaria tiene que establecer su derecho con claridad y, además, tiene que demostrar que no existe controversia sustancial sobre ningún hecho material, o sea, sobre ningún componente de la causa de acción. Quest Diagnostic v. Mun. San Juan, res. el 14 de mayo de 2009, 2009 T.S.P.R. 77, 175 D.P.R. ____.[40] Mientras, la parte que se opone no puede descansar exclusivamente en sus alegaciones ni tomar una actitud pasiva. Toro Avilés v. P.R. Telephone Co., res. el 23 de octubre de 2009, 2009 T.S.P.R. 163, 177 D.P.R. ____. Por el contrario, tiene que controvertir la prueba presentada por la parte solicitante, a fin de demostrar que sí existe controversia real sustancial sobre los hechos materiales del caso en cuestión. González Aristud v. Hosp. Pavía, 168 D.P.R. 127, 138 (2006). Específicamente, la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente, pues si se cruza de brazos corre el riesgo de que se dicte sentencia en su contra sin la celebración de un juicio en su fondo. Corp. Presiding

---

[40] Véase, además, González Aristud v. Hosp. Pavía, 168 D.P.R. 127, 137 (2006).

Bishop CJC of LDS v. Purcell, 117 D.P.R. 714, 721 (1986);

E.L.A. v. Cole, *supra*, pág. 626.

Una vez se presenten la solicitud de sentencia sumaria
y su oposición, el tribunal deberá: (1) analizar todos los
documentos incluidos en ambas mociones y aquellos que obren
en el expediente del tribunal; y (2) determinar si la parte
opositora controvirtió algún hecho material o si hay
alegaciones de la demanda que no han sido controvertidas o
refutadas en forma alguna por los documentos. Mgmt. Adm.
Servs. Corp. v. E.L.A., 152 D.P.R. 599, 611 (2000).[41]

En vista de que la concesión de la sentencia sumaria
está a discreción del tribunal, este Foro ha manifestado
que "[e]l sabio discernimiento es el principio rector para
su uso porque, mal utilizada, puede prestarse para despojar
a un litigante de 'su día en corte', principio elemental
del debido procedimiento de ley". (Énfasis omitido.) Roig
Com. Bank v. Rosario Chirino, 126 D.P.R. 613, 617 (1990).[42]
Como mencionamos, una parte tiene derecho a un juicio
plenario cuando existe una **controversia real y sustancial**
sobre hechos relevantes y pertinentes. (Énfasis en el

---

[41] Véanse, también, PFZ Props., Inc. v. Gen. Acc. Ins. Co., *supra*,
pág. 913; Corp. Presiding Bishop CJC of LDS v. Purcell, *supra*, págs.
722-723.
   Este Tribunal ha manifestado que el foro de instancia deberá
denegar la solicitud de sentencia sumaria cuando: (1) existan hechos
materiales controvertidos; (2) hay alegaciones afirmativas en la
demanda que no han sido refutadas; (3) surja de los propios documentos
que se acompañan con la moción una controversia real sobre algún hecho
material; o (4) no proceda como cuestión de derecho. Refiérase a
PFZ Props., Inc. v. Gen. Acc. Ins. Co., *supra*, págs. 913-914;
Corp. Presiding Bishop CJC of LDS v. Purcell, *supra*, pág. 723.

[42] Véanse, además, E.L.A. v. Cole, 164 D.P.R. 608, 627 (2005);
Audiovisual Lang v. Sist. Est. Natal Hnos., 144 D.P.R. 563, 576 (1997).

original.)  Ramos Pérez v. Univisión de P.R., *supra*.  Esa controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario.[43]  Íd.

A través de los años hemos enfatizado que hay litigios y controversias en los cuales no es aconsejable utilizar la moción de sentencia sumaria, pues son casos en los que existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad es esencial y está en disputa. Ramos Pérez v. Univisión de P.R., *supra*.[44]  No obstante, ello no impide la utilización del mecanismo de sentencia sumaria en reclamaciones que requieren elementos subjetivos o de intención cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge que no existe controversia en cuanto a los hechos materiales.  Íd.

## III

### —A—

Antes de comenzar con la discusión es importante y necesario mencionar unos incidentes que ocurrieron durante

---

[43] Como señalamos en Ramos Pérez v. Univisión de P.R., res. el 3 de febrero de 2010, 2010 T.S.P.R. 15, 178 D.P.R. ____, "[l]a fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria adecuadamente presentada sólo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor.  Si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria". (Citas omitidas.)

[44] Véanse Soto v. Hotel Caribe Hilton, 137 D.P.R. 294, 301 (1994); García López v. Méndez García, 88 D.P.R. 363, 380 (1963).

el trámite procesal del presente caso, pues no podemos obviar asuntos de tanta relevancia.[45]

En primer lugar, debemos señalar una enigmática situación que ocurrió cuando este pleito se encontraba para disposición ante el foro de instancia. Como indicamos en la relación de hechos, en marzo de 2005 el recurrido González presentó una moción de sentencia sumaria y el tribunal de instancia le concedió a la parte contraria (la peticionaria Nieves) un término de 20 días para que expresara su posición. Según consta de los autos del caso, esa orden fue emitida el 1 de abril de 2005 y notificada el 14 del mismo mes y año, por cuanto la peticionaria Nieves tenía hasta el 4 de mayo de 2005 para presentar su escrito.

---

[45] Además, luego de un examen minucioso de los autos originales de los casos DAC-1999-0391 y DDP-2004-0055 han surgido serias interrogantes en torno a la participación del Lcdo. Julio Berríos Jiménez (abogado del recurrido González en el presente pleito) en tales litigios. Pudimos constatar que Berríos Jiménez fue uno de los siete jueces que intervino en el caso DAC-1999-0391 desde su origen en 1999. Este caso comenzó en la Sala 501 del Tribunal de Primera Instancia, Sala de Bayamón, y en diciembre de 2001 fue reasignado a la Sala 404, la cual era atendida por el entonces juez Berríos Jiménez. Este juez fue quien atendió la solicitud de aseguramiento de sentencia presentada por el recurrido González, fue quien decretó el embargo preventivo de bienes inmuebles y fue quien ordenó la expedición del correspondiente mandamiento al Registrador de la Propiedad.

Cuando el presente caso estuvo ante el tribunal de instancia la peticionaria Nieves solicitó la descalificación del Lcdo. Julio Berríos Jiménez, pues éste había intervenido como juez en el caso en el cual se decretó el embargo preventivo que luego provocó la demanda de daños y perjuicios (caso DDP-2004-0055). En febrero de 2005, el foro de instancia le ordenó a Berríos Jiménez que mostrara causa por la cual no debía renunciar al caso, a lo que éste indicó que su intervención en el caso DAC-1999-0391 fue una "intervención administrativa incidental como Juez en una simple moción de prórroga". Véase Apéndice de la Petición de *certiorari*, págs. 43-46. Mediante resolución del 6 de mayo de 2005, el tribunal de instancia declaró no ha lugar la solicitud de descalificación. Véase Apéndice de la Petición de *certiorari*, págs. 75-76.

No obstante, ante lo aquí señalado, entendemos que el foro de instancia debe evaluar nuevamente si procede la descalificación del Lcdo. Julio Berríos Jiménez como representante legal del recurrido González en el presente litigio, una vez se le brinde la oportunidad de aclarar cuál realmente fue su participación.

No obstante, en una súbita actuación, el foro de instancia dictó sentencia sumaria a favor del recurrido González el 15 de abril de 2005, o sea, al día siguiente de la fecha de notificación de la orden para que la peticionaria Nieves se expresara acerca de la solicitud de sentencia sumaria. Esta realidad procesal claramente demuestra que el tribunal de instancia no esperó y, por lo tanto, no tomó en consideración el escrito que podría presentar la peticionaria Nieves, aun cuando ésta había alegado en su demanda y en su réplica a la reconvención hechos relevantes y pertinentes que sin duda permitían concluir que existía una controversia real y sustancial. Por eso, el foro de instancia debió esperar por la oposición a la moción de sentencia sumaria cuya presentación había autorizado.

Esa sentencia sumaria se notificó el 1 de junio de 2005, por lo que a la fecha en que la peticionaria Nieves presentó su escrito el 4 de mayo de 2005 ésta desconocía que ya se había dictado una sentencia en su contra. Esta actuación del tribunal de instancia provocó que se emitiera -de forma sumaria- una determinación sobre la cual el tribunal no tenía un cuadro completo debido a que faltaba la posición de la peticionaria Nieves, quien era precisamente la parte que se oponía a la moción de sentencia sumaria presentada por el recurrido González.

En segundo lugar, debemos indicar que de un examen minucioso tanto de la solicitud de sentencia sumaria del recurrido González como de la sentencia sumaria emitida por

el foro de instancia resulta evidente que esta última constituye un proyecto de sentencia sometido por el recurrido González y firmado "a ciegas" por el foro de instancia. Luego de revisar los mencionados documentos y otros que constan en los autos del presente caso, notamos lo siguiente: (1) el encabezamiento estándar que se había utilizado en otras ocasiones no fue el mismo utilizado en ocasión de la sentencia sumaria, sino, por el contrario, el mismo que utilizó el recurrido González en la moción de sentencia sumaria;[46] (2) el epígrafe de la sentencia sumaria tiene exactamente los mismos errores ortográficos del epígrafe de la solicitud de sentencia sumaria, incluso el mismo error en cuanto al número del caso; (3) en el acápite 4 del trasfondo procesal incluido en la sentencia sumaria se hace referencia a que el tribunal de instancia señaló una vista para "el DIA ----- de abril de 2005", ello con el fin de discutir la moción de sentencia sumaria. Lo cierto es que la fecha se dejó en blanco y no surge del expediente ni de los autos el que tal vista se hubiera celebrado. Si en efecto ésta se hubiese realizado, indudablemente el foro de instancia hubiera incluido la fecha; (4) la parte de las conclusiones de derecho en la sentencia sumaria incluye cada uno de los puntos

---

[46] El encabezamiento estándar utilizado por la jueza consistía de la siguiente información: ESTADO LIBRE ASOCIADO DE PUERTO RICO, TRIBUNAL DE PRIMERA INSTANCIA, CENTRO JUDICIAL DE BAYAMÓN, SALA SUPERIOR, SALÓN DE SESIONES 505. No obstante, en ocasión de la sentencia sumaria sólo se incluyó: ESTADO LIBRE ASOCIADO DE PUERTO RICO, TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE BAYAMÓN.

discutidos por el recurrido González en la moción de sentencia sumaria, aunque no exactamente en el mismo orden, pero sí con los mismos errores ortográficos tanto en las oraciones como en las citas jurídicas;[47] y    (5) la forma estándar utilizada por la jueza al final de sus escritos constaba de su nombre, la firma y el título de Jueza Superior, sin embargo en la sentencia sumaria sólo se incluyó su nombre y la firma.[48]

En Román Cruz v. Díaz Rifas, 113 D.P.R. 500, 508 (1982), planteamos que la costumbre existente en los foros de instancia de solicitar que las partes presenten proyectos de sentencia no es, de por sí, una mala práctica. Por el contrario, constituye un instrumento de ayuda para los jueces que, en su mayoría, se encuentran sobrecargados con una gran cantidad de causas judiciales. Claramente, esa pesada carga de los jueces de instancia puede aliviarse con el uso de los proyectos de sentencia, ya que éstos les sirven como punto de partida o documentos de trabajo en la elaboración de la determinación que finalmente emitan. Román Cruz v. Díaz Rifas, *supra*, pág. 508. No obstante, hemos expresado que lo que resulta censurable e impropio es la práctica de "firmar a ciegas" esos proyectos de

---

[47] Uno de los errores que más se destaca es el siguiente: "Ver FDIC Incúrranse. Martines Almodóvar.671 F. Sep. 851 (1987), Cruz Viera v. Registrador, 1987, 118 DPR 911."  Si el tribunal de instancia hubiera corroborado esta cita hubiese constatado que se refería a FDIC Insurance.

[48] Véase Apéndice de la Petición de *certiorari*, págs. 51-56 (la moción de sentencia sumaria) y págs. 69-74 (la sentencia sumaria).

sentencia, pues tales escritos "no pueden sustituir los dictados de la sana y juiciosa crítica del juez en su labor de desentrañar la verdad". *Malavé v. Hosp. de la Concepción*, 100 D.P.R. 55, 56 (1971).[49]

Ante la realidad de esta práctica de solicitar proyectos de sentencia, los cuales -como mencionamos- constituyen un instrumento de ayuda para los jueces de instancia, es importante apuntar que en el descargue de su función adjudicativa los jueces deben ser más minuciosos al evaluar el contenido de esos escritos, ya que la función adjudicativa es indelegable. Por lo que, reiteramos que es responsabilidad de los jueces escudriñar esos proyectos de sentencia, pues, por lo general, la parte que los prepara intenta "salir por la puerta ancha" en todos los aspectos del caso. Román Cruz v. Díaz Rifas, *supra*, pág. 508.

−B−

En su primer señalamiento de error, la peticionaria Nieves alega que el Tribunal de Apelaciones erró al confirmar la desestimación de su demanda de daños y perjuicios a través del mecanismo de sentencia sumaria. Aduce que tiene una causa de acción contra el recurrido González al amparo del Art. 1802 del Código Civil, *supra*, debido a que la actuación negligente o culposa de éste consistió en que solicitara una anotación preventiva de embargo sobre un inmueble que constaba inscrito a nombre

---

[49] Véanse, también, Báez García v. Cooper Labs., Inc., 120 D.P.R. 145, 157-158 (1987); Cruz v. Díaz Rifas, 113 D.P.R. 500, 508 (1982).

de ella, <u>quien nunca fue parte en el caso DAC-1999-0391</u>. Indicó que esta situación le había impedido disponer del inmueble y le creaba perjuicio económico y emocional. Además, nos señala que bajo la norma establecida en el caso *Berríos v. International Gen. Electric*, *supra,* independientemente de si se perfeccionó o no el embargo su reclamación está sujeta al desfile de prueba sobre los alegados daños y el nexo causal con la actuación del recurrido González, de forma tal que el tribunal de instancia pueda determinar el reclamo de responsabilidad al amparo del Art. 1802 del Código Civil, *supra.*

Entendemos que tanto el foro de instancia como el Tribunal de Apelaciones erraron al determinar que procedía la desestimación mediante sentencia sumaria de la demanda de daños y perjuicios presentada por la peticionaria Nieves. En el caso del tribunal de instancia, éste dictó sentencia sumaria a favor del recurrido González, ello sin antes conocer la posición de la peticionaria Nieves y a pesar de que le había concedido término para que ésta se expresara. Tal actuación va en contra de cómo debe proceder el tribunal de instancia, pues para tener un cuadro más completo del caso debió evaluar tanto la moción de sentencia sumaria como su oposición y así: (1) analizar todos los documentos incluidos en ambos escritos; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones de la demanda que no fueron controvertidas o refutadas en

forma alguna por los documentos.[50]   Atado a ello está la realidad de que el recurrido González no acompañó documentos ni declaraciones juradas con su solicitud de sentencia sumaria.

A pesar de que la concesión de la sentencia sumaria es a discreción del foro de instancia, entendemos que el principio del "sabio discernimiento" debió inclinarse hacia la denegatoria de la solicitud de sentencia sumaria presentada por el recurrido González.   Al no actuar de esta manera, el tribunal de instancia despojó a la peticionaria Nieves de "su día en corte" para presentar su caso y probar cada uno de los 3 elementos de la causa de acción de daños y  perjuicios al amparo del Art. 1802 del Código Civil, *supra*.

En el caso del Tribunal de Apelaciones, ese foro clasificó la reclamación de la peticionaria Nieves como una acción por embargo ilegal y determinó que "no se configura[ba] la causa de acción instada", por lo que "procedía la desestimación de la demanda".[51]   Si examinamos los elementos de la causa de acción por embargo ilegal, según dispusimos en Martí v. Hernández, *supra*, pág. 823, claramente tenemos que concluir que la peticionaria Nieves no cumple con uno ellos: que la acción presentada en su contra y en la cual se decretó el embargo culminó con

---

[50] Véanse Mgmt. Adm. Servs. Corp. v. E.L.A., *supra*, pág. 611; PFZ Props., Inc. v. Gen. Acc. Ins. Co., *supra*, pág. 913; Corp. Presiding Bishop CJC of LDS v. Purcell, *supra*, págs. 722-723.

[51] Véase Apéndice de la Petición de *certiorari*, págs. 150-173.

sentencia firme a su favor.  Esto es así porque el caso DAC-1999-0391 (en el cual se decretó el embargo) <u>no fue presentado contra ella ni contra la sociedad legal de gananciales que integraba con Rodríguez Bracero</u>, sino sólo contra este último (su ex esposo).

**Sin embargo, este caso no versa sobre una causa de acción de daños y perjuicios por embargo ilegal, sino acerca de una acción en daños por conducta negligente al amparo del Art. 1802 del Código Civil,** *supra*. **Erró el Tribunal de Apelaciones al "encasillar" el caso como una acción de daños y perjuicios por embargo ilegal y al confirmar la decisión del tribunal de instancia de desestimar sumariamente la demanda presentada por la peticionaria Nieves.** Valga recordar que sólo procede dictar sentencia sumaria cuando surge de manera clara que el promovido por la solicitud no puede prevalecer bajo ningún supuesto de hechos, o sea, que no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de la evidencia. <u>E.L.A. v. Cole</u>, *supra*, pág. 625.  Por todo lo cual, esta reclamación debe ser atendida en un juicio en su fondo para que las partes presenten su prueba.

**Resolvemos que tiene una causa de acción de daños y perjuicios en virtud del Art. 1802 del Código Civil,** *supra*, **aquella persona que conste como titular registral de un bien inmueble y se vea perjudicada por una anotación preventiva de embargo sobre esa propiedad, ello debido a**

**que tal anotación accedió al Registro de la Propiedad después de que esa persona advino dueña del inmueble y esa persona no fue parte demandada en el pleito en el cual se decretó el embargo preventivo para asegurar la efectividad de la sentencia.** Claro está, corresponde a esa persona –en el juicio plenario– probar cada uno de los 3 elementos de la causa de acción de daños y perjuicios al amparo del Art. 1802 del Código Civil, *supra*. En el caso particular que tenemos ante nuestra consideración, la peticionaria Nieves deberá probar en qué consistió la negligencia por parte del recurrido González al alegadamente no constatar que ella era la dueña registral de la propiedad sobre la cual se anotó el embargo preventivo.

–C–

En su segundo señalamiento de error, la peticionaria Nieves nos señala que el Tribunal de Apelaciones erró al devolver el caso al foro de instancia, pues ese tribunal apelativo concluyó que existían controversias de hechos que no permitían la disposición sumaria de la reconvención presentada por el recurrido González. Específicamente, el Tribunal de Apelaciones determinó que existían controversias de hechos en torno a: (1) la presunción de ganancialidad de la deuda contraída por Rodríguez Bracero durante la vigencia del matrimonio con la peticionaria Nieves; y (2) la validez de la escritura de liquidación de

sociedad de bienes gananciales mediante la cual se otorgó el inmueble a favor de la peticionaria Nieves.

Nos indica la peticionaria Nieves que las expresiones del Tribunal de Apelaciones en torno a que existen tales controversias de hechos "no debe[n] interpretarse como que el [recurrido González] puede volver a atacar la legalidad [de] la escritura de liquidación de gananciales como lo hizo en el caso DAC-1999-0391".[52]   Por su parte, el recurrido González aduce que erró el Tribunal de Apelaciones "al modificar la Sentencia Sumaria originalmente dictada de forma correcta por [el foro de instancia]".

En su reconvención, el recurrido González solicitó que <u>la peticionaria Nieves respondiera por la totalidad de la suma</u> adjudicada mediante sentencia en el caso DAC-1999-0391.   Esto es, que respondiera <u>por la determinación que se dictó en contra de Rodríguez Bracero</u> el 18 de agosto de 1999.   Así, el foro de instancia condenó a la peticionaria Nieves al pago de $20,130 más los intereses legales acumulados.

De todos los documentos examinados por esta Curia surge que tanto el procedimiento administrativo ante el D.A.Co. (Querella Núm. QC-98-CONST-062) como el procedimiento judicial en el caso DAC-1999-0391 fueron

---

[52] Específicamente, la peticionaria Nieves señala que en ese caso el recurrido González alegó que la mencionada escritura fue hecha en fraude de acreedores, pero nada hizo para probar tal alegación y tampoco apeló la determinación del tribunal de instancia de dejar sin efecto la anotación preventiva de embargo.

dirigidos contra una sola persona: Ángel Rodríguez Bracero h/n/c A.R. Construction.  En ningún documento y en ninguna alegación surge que tales procedimientos se instaran contra la sociedad legal de gananciales que existía entre Rodríguez Bracero y la peticionaria Nieves ni tampoco que se emplazara a dicha sociedad por conducto de Rodríguez Bracero.  Tampoco surge que se incluyera a la peticionaria Nieves como parte demandada o que se planteara que ésta pudiera tener alguna responsabilidad ante los hechos alegados por el recurrido González.[53]

En su moción de sentencia sumaria, el propio recurrido González admitió que en el pleito DAC-1999-0391 no se utilizó el mecanismo procesal adecuado, por lo que no había jurisdicción sobre la peticionaria Nieves ni sobre la sociedad legal de gananciales que existía entre Nieves y Rodríguez Bracero.  Véase Apéndice de la Petición de certiorari, págs. 51-56.

Entendemos que tanto el foro de instancia como el Tribunal de Apelaciones erraron en sus respectivas decisiones en torno a la reconvención presentada por el recurrido González.  En el caso del tribunal de instancia, éste dispuso sumariamente de la reconvención y condenó a la peticionaria Nieves al pago de $20,130 más los intereses legales acumulados, o sea, que respondiera por la cantidad adjudicada en la sentencia que se dictó en contra de Rodríguez Bracero en agosto de 1999.  Por su parte, el

---

[53] Véase Reyes v. Cantera Ramos, Inc., 139 D.P.R. 925, 928-930 (1996).

Tribunal de Apelaciones revocó la decisión de declarar con lugar la reconvención de manera sumaria, por lo que ordenó que se pasara prueba sobre los dos asuntos ya mencionados, ello debido a que existía controversia de hechos en torno a éstos.

Concluimos que erró el Tribunal de Apelaciones al devolver el presente caso al foro de instancia para que allí se dilucide únicamente lo relativo a las controversias de hechos ya mencionadas. En este caso lo que procede es que el tribunal de instancia atienda en su totalidad la causa de acción presentada por el recurrido González a través de su reconvención. Es imperativo que el recurrido González presente prueba para sustentar su reclamación y que la peticionaria Nieves tenga la oportunidad de presentar evidencia en contrario.

Contrario a lo decidido por el foro de instancia, claramente no se puede imponer responsabilidad a la peticionaria Nieves por una sentencia que fue dictada en un procedimiento judicial en el cual ni ella ni la sociedad legal de gananciales que integraba con Rodríguez Bracero fueron parte. Como planteamos en Medina v. Medina, 161 D.P.R. 806, 816 (2004), en un litigio el concepto "parte" se encuentra entrelazado con el concepto de "jurisdicción sobre la persona". En nuestro sistema procesal civil la personalidad jurídica es indispensable para comparecer como parte en un proceso, ya sea como parte demandante o parte demandada. R. Hernández Colón,

op. cit., Sec. 1101, pág. 127. Además, en las acciones *in personam* es necesario que se incluya el nombre correcto de la parte demandada[54] y que se le notifique a ésta acerca del litigio, ello con tiempo suficiente para que pueda comparecer y defenderse. Núñez González v. Jiménez Miranda, 122 D.P.R. 134, 144 (1988).[55]

Por todo lo anterior, resolvemos que la sentencia emitida por el tribunal de instancia el 18 de agosto de 1999 no se puede oponer contra la peticionaria Nieves, pues ésta no fue demandada ni traída al pleito DAC-1999-0391 al igual que tampoco fue incluida la sociedad legal de gananciales que integraba con Rodríguez Bracero. Así, pues, tal sentencia no podía ejecutarse ni es ejecutable contra la peticionaria Nieves. Erró el foro de instancia al condenar a la peticionaria Nieves al pago de la totalidad de la deuda reclamada –mediante reconvención– por el recurrido González y erró el Tribunal de Apelaciones al devolver el caso al tribunal de instancia sólo para que se evaluaran las mencionadas controversias de hechos.

---

[54] Véase la Regla 15.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 15.4, en referencia a la figura del demandado de nombre desconocido.

[55] Esa notificación a la parte demandada, la cual constituye una exigencia del debido proceso de ley, se efectúa por medio del emplazamiento, de forma tal que el tribunal adquiera jurisdicción sobre la persona del demandado. León v. Rest. El Tropical, 154 D.P.R. 249, 258 (2001). El emplazamiento cumple el propósito de que se le notifique adecuadamente a la parte demandada acerca de la reclamación que existe en su contra y, además, que se le brinde la oportunidad de ser oído antes de que se adjudiquen sus derechos. Íd. Como expusimos en Acosta v. ABC, Inc., 142 D.P.R. 927, 931 (1997), "la falta de diligenciamiento del emplazamiento (personal o por edictos) priva al tribunal de jurisdicción sobre la persona e invalida cualquier sentencia en su contra".

**IV.**

De acuerdo con lo antes expuesto, este Foro revoca la sentencia emitida por el Tribunal de Apelaciones, por lo que procede que se devuelva el caso al Tribunal de Instancia, Sala Superior de Bayamón, para que se diluciden la demanda y la reconvención conforme a lo aquí resuelto.

Se dictará Sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ana Rosa Nieves Díaz

    Apelante

        v.                        AC-2005-73

Sixto González Massas

    Apelado

SENTENCIA

San Juan, Puerto Rico, a 27 de abril de 2010.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la sentencia emitida por el Tribunal de Apelaciones, por lo que procede que se devuelva el caso al Tribunal de Instancia, Sala Superior de Bayamón, para que se diluciden la demanda y la reconvención conforme a lo aquí resuelto.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez no intervinieron. La Jueza Asociada señora Pabón Charneco no interviene.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo